Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6031 | **DATE** | 5/17/2004 |
| **CASE TITLE** | Private B&T Co. vs. Progressive Casualty | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. PrivateBank and Trust Company's motion for summary judgment (R. 9-1) is denied, and Progressive Casualty's motion for summary judgment (R. 12-1) is granted. Status hearing set for 5/25/04 is stricken. Any other pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 1 8 2004 date docketed | 9 |
| ✓ | Docketing to mail notices. | | JXM | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| THE PRIVATEBANK AND TRUST COMPANY, )<br>  Plaintiff, )<br> )<br>v. )<br> )<br>PROGRESSIVE CASUALTY INSURANCE COMPANY, )<br>  Defendant. )<br>--------------------------------------------------- )<br> )<br>PROGRESSIVE CASUALTY INSURANCE COMPANY, )<br>  Defendant/Counter-Plaintiff, )<br> )<br>v. )<br> )<br>THE PRIVATEBANK AND TRUST COMPANY, )<br>  Plaintiff/Counter-Defendant. ) | No. 03 C 6031 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff The PrivateBank and Trust Company ("PrivateBank") filed a one-count complaint against Defendant Progressive Casualty Insurance Company ("Progressive") alleging breach of contract. Progressive filed a one-count counterclaim against PrivateBank seeking a declaratory judgment that the contract does not oblige Progressive to perform, and requesting dismissal of PrivateBank's breach of contract claim.

PrivateBank moved for summary judgment on the breach of contract claim, and

1

19

Progressive filed a cross-motion requesting summary judgment on its declaratory judgment claim. For the reasons stated herein, PrivateBank's motion is denied and Progressive's cross-motion is granted.

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 2552 (1986). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Opportunity Comm'n v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## BACKGROUND

### I. PrivateBank's Loss

On April 14, 2003, a man representing himself as Lawrence Goodman ("Goodman") entered PrivateBank's branch office in Wilmette, Illinois. (R 9-1, Pl.'s Statement of Undisputed Material Facts ("Pl.'s Rule 56.1 Stmt.") ¶¶ 6-7.) "Goodman" claimed that he was an employee

of a company called BBI Enterprises, Ltd. ("BBI"), and sought to open a checking account for BBI. (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶¶ 6-7.) PrivateBank opened a checking account in the name of BBI.[1] (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶¶ 8-9.)

"Goodman" sought to deposit two checks worth a total of $461,057.18 drawn on the account of Lear Corporation (the "Lear Checks") and made payable to BBI Enterprises, Ltd. into the BBI account. (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶ 6.) "Goodman" did not endorse or otherwise alter the Lear Checks, which contained authorized signatures of representatives of Lear corporation. (R. 14-1, Def.'s Stmt. of Undisputed Material Facts ("Def.'s Rule 56.1 Stmt.") ¶ 10.) Instead, a PrivateBank employee endorsed the Lear Checks with a stamp.[2] (R. 14-1, Def.'s Rule 56.1 Stmt. ¶ 10.) PrivateBank deposited the two Lear Corporation checks into the BBI account. (R 9-1, Pl.'s Rule 56.1 Stmt. ¶ 10.) Because the availability of the deposited funds depended on "Fed availability," the funds were unavailable for use until two business days after the deposit. (R 9-1, Pl.'s Rule 56.1 Stmt. ¶ 11.) On April 16, 2003, the $461,047.18 from the

---

[1] In order to open the account, "Goodman" presented: (1) Articles of Incorporation for a company called BBI Enterprises, Ltd.; (2) a letter addressed to "Goodman" stating that the Articles of Incorporation for BBI had been filed with the Office of the Illinois Secretary of State; (3) an Internal Revenue Service Employer Identification Number ("EIN") Verification noting that BBI Enterprises, Ltd. had an active EIN as of April 3. 2003; (4) an Illinois Driver's license issued to Lawrence Goodman, with a photograph depicting the individual representing himself as Lawrence Goodman; and (5) an employee identification card purportedly issued by BBI which also contained a photograph matching the individual representing himself as Lawrence Goodman. (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶ 8.)

[2] PrivateBank's Response to Progressive's Rule 56.1 Stmt. claims that the PrivateBank employee endorsed the checks with a Stamp pursuant to "Goodman"'s instructions. (R. 17-1, Def.'s Reply to Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts ("Def.'s Rule 56.1 Reply") ¶ 10.) PrivateBank fails to reference the parts of the record, supporting materials, or affidavits relied upon in setting forth this additional fact pursuant to Local Rule 56.1(b)(3)(B), however. *Id.*; *See* Local Rule 56.1(b). Accordingly, the Court disregards PrivateBank's assertion that "Goodman" instructed PrivateBank's employee to endorse the checks.

deposited checks cleared for use by BBI. (R 9-1, Pl.'s Rule 56.1 Stmt. ¶ 12.)

On the same day the checks cleared, "Goodman" purchased approximately 1,160 gold coins from Harlan J. Berk, Ltd. ("Berk"), a merchant in Chicago with a PrivateBank account. (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶ 13.) "Goodman," who was not present on the premises of PrivateBank at the time, telephoned PrivateBank and requested payment of $400,200.00 from the BBI account to Berk's account. (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶¶ 14-15.) PrivateBank transferred the requested sum from the BBI account to the Berk account. (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶ 15.) "Goodman" did not withdraw any of the remaining funds from the BBI account.[3] (R. 14-1, Def.'s Rule 56.1 Stmt. ¶ 15.)

On approximately April 28, 2003, PrivateBank discovered that: (1) "Goodman"'s true identity was Robert A. Manola; (2) Lear Corporation issued the checks that "Goodman" deposited to a different company similarly named BBI Enterprises; (3) "Goodman" presented stolen checks; (4) BBI was not the company to which Lear Corporation issued the two checks, but rather a non-functioning corporation created for the purpose of inducing PrivateBank to deposit the stolen checks; and (5) the personal information presented by "Goodman" was fraudulent because "Goodman" did not exist. (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶¶ 16-17.) Because "Goodman" deceived PrivateBank, PrivateBank suffered a loss of $400,200.00. (R. 9-1, Pl.'s Rule 56.1 Stmt. ¶ 18.)

## II. The Bond

On September 10, 2002, Progressive issued a Financial Institution Bond (the "Bond")

---

[3] When "Goodman" returned to PrivateBank to attempt to withdraw the remaining funds, law enforcement arrested him.

4

with a bond period of July 31, 2002 through July 31, 2003. (R. 14-1, Def.'s Rule 56.1 Stmt. ¶ 2.)

The Bond contained an insuring agreement for "on premises" losses, which states in pertinent part: "The Underwriter . . . agrees to indemnify the Insured for:

ON PREMISES

(B)(1) Loss of Property resulting directly from

\* \* \*

(b) theft, false pretenses, common-law or statutory larceny, committed by a person present in an office or on the premises of the Insured

while the Property is lodged or deposited within the offices or premises locate anywhere."

(R. 14-1, Def.'s Rule 56.1 Stmt. ¶ 17.)

The Bond contains the following exclusion for erroneous credits ("Exclusion (n)"), which provides that the bond does not cover:

> loss resulting directly or indirectly from payments made or withdrawals from a depositor's account involving erroneous credits to such account, unless such payments or withdrawals are physically received by such depositor or representative of such depositor who is within the office of the Insured at the time of such payment or withdrawal . . . .

(R. 14-1, Def.'s Rule 56.1 Stmt. ¶ 20.)

PrivateBank filed a claim under the Bond, and on June 16, 2003, Progressive received a proof of loss (the "Proof of Loss"), dated May 30, 2003. After Progressive denied coverage for the loss, PrivateBank filed this suit for breach of contract. The parties' cross motions for summary judgment are currently before the Court.

## ANALYSIS

The parties do not dispute the facts in this case. Instead, the undisputed facts present a pure question of law for the Court. "This case essentially involves the construction of an

5

insurance policy or bond. . . . In such a situation, '[t]he construction of an insurance policy, or the interpretation of a bankers blanket bond, is a question of law to be determined by a court.'" *Alpine State Bank v. Ohio Cas. Ins. Co.*, 941 F.2d 554, 559 (7th Cir. 1991). "[W]here the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law for the court to decide." *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 134 (1st Cir. 1984).

In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the insurance contract. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). Under Illinois law,[4] "an insurance policy that contains no ambiguity is to be construed according to the plain and ordinary meaning of its terms, just as would any other contract." *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir. 1987); *see also Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 479, 693 N.E.2d 358, 368 (1998) ("The terms of an agreement, if not ambiguous, should be generally enforced as they appear, and those terms will control the rights of the parties."). If there are two or more reasonable readings of an insurance policy, the policy is ambiguous, and the court must interpret it in favor of the insured and against the insurer that drafted the policy. *Id.* Nonetheless, courts should not search for an ambiguity where none exists. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077-1078 (1993).

---

[4] Illinois law governs this dispute because PrivateBank is an Illinois citizen, PrivateBank does business in Illinois, and received the Bond in Illinois. *See Holfeld v. Nationwide Life Ins. Co.*, 59 Ill. 2d 522, 528, 322 N.E.2d 454, 457-458 (1975).

Under Illinois law, an insured party bears the burden of proving that its claim falls within the insuring agreement. *See, e.g., Reedy Indus., Inc. v. Hartford Ins. Co. of Ill.*, 306 Ill. App. 3d 989, 994, 715 N.E.2d 728, 731-32 (1st Dist. 1999) (stating that the insured must come forth with "some evidence that its claim falls within the terms of the coverage") (citations omitted). Accordingly, PrivateBank bears the burden of proving that its claim falls within one of the insuring agreements contained within the Bond.[5]

## I. The "On Premises" Insuring Agreement

The parties first dispute whether the "On Premises" provision in the insuring agreement covers PrivateBank's loss. That provision governs losses "resulting directly from . . . theft [or] false pretenses" committed "by a person present in an office or on the premises" of PrivateBank. PrivateBank argues that the provision covers their loss because the loss was the "direct result" of "Goodman's" false pretenses committed on the bank's premises despite "Goodman's" absence from PrivateBank's premises at the time he transferred the funds. Recognizing that "false pretenses" and "loss" are two different events, PrivateBank argues that the loss was the "direct result" of "Goodman's" false pretenses while on PrivateBank's premises when he opened the account and deposited the checks. PrivateBank further argues that false pretenses committed on the premises proximately caused the loss, satisfying the "directly result" standard.

---

[5] The Bond also contains a provision indemnifying the insured for "forgery or alteration." PrivateBank, however, does not seek coverage under this provision and has not moved for summary judgment based on it. Progressive has argued that the forgery or alteration provision does not cover PrivateBank's loss. PrivateBank does not respond to this argument. Because PrivateBank did not raise it as a basis for coverage, they have waived the argument. *See Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1066 n.2 (7th Cir. 2000) (issue waived where party failed to raise it). In any event, the Court agrees with Progressive that the "forgery or alteration" insuring agreement does not cover PrivateBank's loss because there was no forgery given that "Goodman" did not sign the name of another. *See Alpine*, 941 F.2d 560 (7th Cir. 1991).

Progressive responds that the "on premises" coverage requires the presence of the wrongdoer on the premises at the time that the loss occurs. Progressive does not dispute that "Goodman" opened the BBI account and deposited the Lear Checks under false pretenses, but argues that these events merely provided the opportunity for the loss to occur. Progressive contends that the request for and execution of a telephone transfer – which did not occur on the bank's premises – caused the loss. Progressive further contends that the proximate cause standard is inapplicable because rules of contract construction, rather than tort principles, determine the meaning of the Bond's terms.

### A. Construction of the "On Premises" Requirement

The Seventh Circuit construed identical "on premises" language in *Alpine State Bank v. Ohio Casualty Ins. Co.*, 941 F.2d 554 (7th Cir. 1991). In *Alpine*, a bank customer misappropriated checks from his employer, endorsed them with a rubber stamp, and deposited the checks into his personal account. The bank made a claim against its insurer under "on premises" coverage. *Id.* at 556. Because the customer did not steal the checks while on the bank's premises, and because the deposit of the checks did not constitute a loss, the *Alpine* court found that, within the meaning of the bond, no on-premises loss occurred. *Id.* at 561.

Under the rationale of *Alpine,* the "on premises" insuring agreement requires the physical presence of the person causing the loss at the time that the loss occurs. Under *Alpine*, the mere act of depositing does not constitute a loss. The Seventh Circuit held that "the Bank's deposit of the misappropriated checks was not tantamount to [the customer's] receiving currency or money." *Id.* At 569. *See also Bradley Bank v. Hartford Accident & Indem. Co.*, 737 F.2d 657, 661 (7th Cir. 1984) ("In no sense, however, did the mere act of accepting the deposits while its

8

customer was present irrevocably commit the plaintiff to allow withdrawals from the account"). Furthermore, because the funds from the checks deposited by "Goodman" were subject to "Fed availability," PrivateBank could not honor the checks or transfer funds until two days after the deposit.

Here, the loss was the direct result of the telephonic transfer. "Goodman" was not on the premises at the time of that transfer. Accordingly, PrivateBank's loss is not covered by the "on premises" insuring agreement.

Plaintiff's reliance on *Southern Nat'l Bank of North Carolina v. United Pacific Ins. Co.*, 864 F.2d 329, 332 (4th Cir. 1989), does not provide otherwise. First, it is not binding on this Court. Second, even the court in *Southern National* noted that "[c]ommentators . . . have emphasized that the 'on premises' requirement in standard blanket bonds is designed to exclude coverage for losses from fraud perpetrated by telephone or computer, except in those rare instances where the perpetrator phones or uses a computer hook-up from the property of the bank itself . . . ." *Id.* at 332. As discussed above, the loss here was a direct result of the transfer made pursuant to "Goodman's" telephone call.[6]

## II. Exclusion (n)

Progressive argues that even if the "on premises" coverage applies, Exclusion (n) precludes coverage because the credits to the BBI Account were "erroneous." PrivateBank responds that Exclusion (n) does not apply under the "mend the hold" doctrine and because the funds were not "erroneously" deposited. The Court agrees with Progressive.

---

[6] PrivateBank argues that the Court should analyze the "directly result" language in the "on premises" insuring agreement under a proximate cause standard. Given the clear language of *Alpine*, this argument fails.

9

## A. The "Mend the Hold" Doctrine

PrivateBank first claims that the "mend the hold" doctrine bars Progressive from denying coverage under this exclusion because Progressive did not reference the exclusion within its written statements denying coverage. The "mend the hold" doctrine, which limits the right of a party to a contract suit to change its litigating position, *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 362 (7th Cir. 1990), does not bar Progressive from denying PrivateBank's claim under Exclusion (n) because Progressive pled the Exclusion in its Answer, Affirmative Defenses, and Counterclaim. Although the reach of this doctrine is uncertain, the Supreme Court of Illinois has described the doctrine as one that estops a party to a contract dispute from changing the ground on which it refused to perform a contract, whether or not it was a ground stated in a pleading, or otherwise in the course of litigation. *Id.* at 364. No Illinois Appellate Court holds that the "mend the hold" doctrine applies at the pleading stage. *Delaney v. Rehkemper I.D., Inc.*, 254 Ill. App. 3d 933, 941, 627 N.E.2d 244, 249 (1st Dist. 1993) (noting that Illinois courts had only applied the doctrine at summary judgment and trial stages of litigation). At most, the doctrine appears to bar a contracting party from changing his reason for nonperformance during litigation, rather than before litigation. *See Harbor Ins. Co.*, 922 F.2d at 364 (discussing the application of the "mend the hold" doctrine in Illinois Appellate Courts). *See also Israel v. National Canada Corp.*, 276 Ill. App. 3d 454, 462, 658 N.E.2d 1184, 1191 (1st Dist. 1995) (the mend the hold doctrine "does not require that the defense be asserted at the time the contract is terminated"); *Tobi Eng., Inc. v. Nationwide Mut. Insc. Co.*, 214 Ill. App.3d 692, 696, 574 N.E.2d 160, 162 (1991) ("an insurer is not required to assert all of its defenses to liability in a letter to its insured"). This position is also consistent with the Seventh Circuit's recent statement that the mend the hold doctrine "limits the right of a party to a contract *suit* to change positions."

*Houben v. Telular Corp.*, 309 F.3d 1028, 1036 (7th Cir. 2002) (emphasis added). Given that Progressive pled the exclusion in its answer, it has not altered its position during the litigation and is not barred from asserting it now.

### B. Erroneous Deposit

PrivateBank next contends that Exclusion (n), on its face, does not apply to PrivateBank's loss because funds deposited under false pretenses are not "erroneously" deposited. PrivateBank argues that "erroneous deposits" differ from deposits made under "false pretenses" in that the inquiry into the existence of "erroneous deposits" focuses on the conduct of the bank, whereas the inquiry into a deposit under "false pretenses" focuses on the conduct of the wrongdoer. According to PrivateBank, an erroneous deposit only occurs where the bank makes a mistake. It argues that the record contains no evidence that PrivateBank made an error.

Exclusion (n) excludes PrivateBank from recovering under the Bond because, contrary to PrivateBank's assertions,[7] PrivateBank erroneously credited the BBI account by failing to require "Goodman" to endorse the checks at the time of deposit. Under similar facts, the *Alpine* court applied an exclusion containing identical language to Exclusion (n) to foreclose liability under a bond.[8] *Alpine*, 941 F.2d at 561. As discussed above, *Alpine* involved a bank customer who

---

[7] PrivateBank contends that "there is no evidence that PrivateBank made an error," (R. 7-1, Pl.'s Mem. Supp. at 9), and that the "bank . . . has not made a mistake or committed an act of malfeasance . . . [i]t has done everything correctly, but has been deceived into doing something it would otherwise not have done." (R. 16-1, Pl.'s Rep. and Opp'n at 8). PrivateBank notes, however, that "[i]t is conceivable that someone might be tricked, but also might make an error of some kind, in the absence of which the fraud might have been protected." (*Id.* at 8 n.2.) Discussing *Alpine*, PrivateBank notes that, under those facts, it appears that "the bank mistakenly accepted company checks for deposit in the employee's personal account." (*Id.* at 9 n.3.)

[8] "Exclusion O" in *Alpine* "excludes coverage under the bond for loss resulting directly or indirectly from payments made or withdrawals from a depositor's account involving erroneous credits to such account, unless such payments or withdrawals are physically received by such

11

appropriated checks, endorsed them with a rubber stamp, and deposited them into his personal account. The *Alpine* court held that the exclusion foreclosed the insurance carrier's liability.

As in *Alpine*, the deposited checks here were misappropriated. The checks in both cases were endorsed by rubber stamp rather than their presenters' signatures — in *Alpine*, the customer stamped the checks, whereas here PrivateBank stamped the checks. Exclusion (n) contains language identical to that under which the *Alpine* court foreclosed the insurer's liability. Accordingly, Exclusion (n) forecloses Progressive's liability under the Bond.[9]

---

depositor or representative of such depositor who is within the office of the insured at the time of such payment or withdrawal . . . ." *Alpine*, 941 F.2d at 561 (emphasis omitted).

[9] PrivateBank argues that the only issue regarding "Exclusion O" in *Alpine* was the interpretation of the exception to the exclusion. (R. 16-1, Pl.'s Rep. and Opp'n at 9.) Although the *Alpine* court did not substantively address the interpretation of the exclusion, it did find that the exclusion applied under the facts of the case prior to examining the application of the exception to the exclusion. 941 F.2d at 561. Given that the language of the exclusion requires the existence of erroneous credits to invoke the exclusion, the *Alpine* court's statement that "[i]n any event, "Exclusion O" under the bond forecloses [the insurer's] liability" supports that the court concluded that there had been erroneous credits to the customer's account. *See id.*

## CONCLUSION

PrivateBank cannot recover for the loss under the "on premises" insuring agreement because the person who caused the loss was not on PrivateBank's premises when the loss occurred. Even if PrivateBank could recover under the "on premises" insuring agreement in the Bond, Exclusion (n) bars PrivateBank's recovery because PrivateBank erroneously credited the account when it accepted checks for deposit without requiring and verifying an endorsement from "Goodman" at the time of presentment. Accordingly, PrivateBank's motion for summary judgment is denied, and Progressive's cross-motion for summary judgment is granted.

Dated: May 17, 2004    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge